UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 1:14-CR-83-CLC-CHS |
| vs. | ) | |
| | ) | |
| WILLIAM BASS | ) | |

REPORT AND RECOMMENDATION

This matter came before the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation on defendant's motion for an evaluation as to his mental competency to stand trial [Doc. 47].

A hearing was held on said motion before the undersigned Magistrate Judge on April 17, 2016, in which the following participated:

1. Assistant United States Attorney Jay Woods for the United States.
2. The defendant, WILLIAM BASS.
3. Attorney Gianna Maio for Defendant.

Motion for Psychiatric and Medical Examination

On February 10, 2015, a motion was filed in this case by Defendant seeking an evaluation pursuant to 18 U.S.C. §§ 4241 and 4247 to determine if Defendant has psychological, psychiatric and/or mental impairments, disorders, or disease which would render him incompetent to stand trial or enter a plea [Doc. 47]. United States Magistrate Judge William B. Mitchell Carter conducted a hearing on said motion and entered an Order of Commitment for Mental Evaluation on February 23, 2015 [Doc. 53] to determine Defendant's mental capacity to stand trial and to assist in his own defense. Pursuant to Magistrate Judge Carter's order,

1

Defendant reported to the Federal Medical Center in Lexington, Kentucky on March 30, 2015. Defendant was released from this facility on May 15, 2015 [Doc. 79]. According to the forensic report of Dia B. Boutwell, Ph.D., ABPP of the Federal Medical Center in Lexington, Kentucky, Defendant Bass was not competent to stand trial due to a neurocognitive disorder which causes memory impairments. Dr. Boutwell concluded that competency restoration may be beneficial. Magistrate Judge Carter recommended that Defendant be committed to a federal medical center for treatment for restoration to competency pursuant to 18 U.S.C. § 4241(d) [Doc. 97]. On October 28, 2015, the District Court accepted and adopted the magistrate judge's recommendations and ordered Defendant committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for treatment in a suitable facility to determine whether there was a substantial probability that, in the foreseeable future, he would attain the capacity to permit this case to proceed [Doc. 119].

Defendant Bass began competency restoration in August 2015. On January 4, 2015, the Court received a Certificate of Restoration to Stand Trial and a Forensic Evaluation (Report) prepared by Dr. Angela Walden Weaver and Dr. Tracy O'Connor Pennuto at the Federal Medical Center in Butner, North Carolina (FMC-Butner) [Doc. No. 121]. Following receipt of the Report, Defendant Bass moved for a hearing to determine his competency to stand trial, to assist in his defense, and to enter a plea [Doc. 127]. The undersigned Magistrate Judge Christopher H. Steger held an evidentiary hearing on April 17, 2016, to address Defendant Bass' competency.

Testimony at the April 17, 2016, Hearing

Tracy O'Connor Pennuto, J.D., Ph.D, and Angela Walden Weaver, Ph.D., both of whom

2

Case 1:14-cr-00083-CLC-CHS   Document 133   Filed 05/05/16   Page 2 of 6   PageID #: 950

are employed at FMC-Butner, testified. Both witnesses presented their curriculum vitae [Gov. Exs. 1 and 2]. They appear to be extremely well-credentialed and to possess appropriate expertise to evaluate and treat Defendant's mental health. Dr. Pennuto holds a doctorate in Clinical Psychology with a focus in neuropsychology and forensic pathology and has been employed at FMC-Butner for five years. Dr. Walden Weaver holds a doctorate in Clinical Psychology and has been employed as a forensic psychologist at FMC-Butner since 1995. Based on their testimony and their Report, I make the following findings:

Mr. Bass presented to the facility complaining of dementia. He also reported psychosis within the past year. However, he appeared to adjust well to the facility. He attended activities of daily living without assistance, oriented himself to the hospital, and moved about the facility without problems – a task which is difficult to perform by someone with memory problems in the large facility. He remembered and kept appointments. He remembered and followed rules. He was well groomed and behaved appropriately. His thinking was logical, linear, and goal directed. He communicated his needs and responded appropriately to instructions. On the whole, his behavior did not support a finding of dementia or psychosis.

Mr. Bass attended the Competency Restoration Group at FMC-Butner, an education group which provided information designed to impart a factual and rational understanding of the charges against him, his role assisting his attorney, pleas, courtroom procedures, roles of courtroom personnel, his role as a defendant, and basic legal vocabulary. Following his participation in the Competency Restoration Group, Mr. Bass' answers to questions regarding these subjects demonstrated an understanding of the subject matter [Report at 4, Doc. 125].

Dr. Pennuto administered psychological testing in the form of the Personality Assessment

3

Inventory and the Test of Memory Malingering (TOMM). The TOMM indicated Defendant was not motivated to perform well or, alternatively, that he purposely exaggerated his memory deficits [Report at 5, Doc. 125]. Other tests and procedures administered were:

> Clinical interview with the patient
> Wide Range Achievement Test-4 (reading subtest)
> Wechsler Adult Intelligence Scale-IV
> Trail Making Test
> Stroop Color and Word Test
> Wisconsin Card Sorting Test
> California Verbal Learning Test-II
> Wechsler Memory Scale-IV
> Brief Visuospatial Memory Test-Revised
> Boston Naming Test
> Multilingual Aphasia Examination
> Controlled Oral Word Association
> Category Fluency (Animal Naming)
> Beck Depression Inventory
> Beck Anxiety Inventory

[Report at 5, Doc. 125].

Mr. Bass performed below expectation on an embedded validity measure on the California Verbal Learning Test-II [Report at 8, Doc. 125]. On the Wechsler Memory Scale Logical Memory delayed recognition test, his score fell below that of someone with advanced dementia. The doctor's interpretation of this score was that he deliberately chose the wrong answers. *Id.*

Drs. Walden Weaver's and Pennuto's Report summarized that his self-reported problems with short term memory were not borne out in formal testing and that, "he demonstrated no significant cognitive compromises, and certainly not the breadth or depth of cognitive impairments required to meet criteria for the diagnosis of a dementia. There was no evidence of an amnestic profile that would be expected from a neurodegenerative condition, such as

4

Alzheimer's disease" [Report at 12-13, Doc. 125]. Neuropsychological evaluation revealed a cognitive profile falling within the low to low average ranges with borderline range performances in some areas of language functioning. (Report at 15, Doc. 125).

Dr. Walden Weaver's and Dr. Pennuto's diagnostic impressions pursuant to the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition (DSM-5) were:

> 309.28, Adjustment Disorder, Mixed with Anxiety and Depressed Mood
> 305.70, Stimulant Use Disorder, Amphetamine-type Substance, Mild, in sustained remission
> V62.89, Borderline Intellectual Functioning
> V65.2 Malingering

[Report at 13, Doc. 125]. The Report additionally summarized that Mr. Bass meets the criteria for malingering, *to wit*, the intentional production of false or grossly exaggerated symptoms, motivated by external incentive and not attributable to a mental disorder. Though Mr. Bass endorsed symptoms of severe psychotic disturbance, his presentation was inconsistent with that endorsement and his reports of memory problems and dementia were not supported by testing or behavioral observations [Report at 14, Doc. 125]. Dr. Walden-Weaver's and Dr. Pennuto's testimonies at the evidentiary hearing were entirely consistent with their report.

Defendant was able to discuss correctly the nature of his charges and the roles of various court personnel and his attorney. He also demonstrated an understanding of the legal proceedings and discussed appropriately various options such as plea bargaining and a bench versus jury trial. Dr. Walden-Weaver and Dr. Pennuto concluded Mr. Bass could understand the nature and consequences of the proceedings against him and could assist in his defense [Report at 14-16, Doc. 125].

Based on the totality of the evidence present to me on April 17, 2017, it is

RECOMMENDED[1] that the Court find that Defendant William Bass is competent to understand the nature and consequences of the proceedings against him; that he is able to assist in his defense; and that is capable of understanding and entering a plea.

ENTER:

*s/Christopher H. Steger*
CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

---

1 Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Courts order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).